**In re ESTATE OF James A. PALMER, Deceased.**

No. C7–02–182.

Court of Appeals of Minnesota.

June 18, 2002.

Robert A. McLeod, McLeod & Troy, P.A., St. Paul, MN, for appellant Marie C. Palmer.

Richard S. Eskola, Moore, Halsey & Eskola, L.L.C., Fridley, MN, for respondent Michael J. Smith.

Considered and decided by WILLIS, Presiding Judge, HARTEN, Judge, and HUSPENI, Judge.*

## OPINION

HARTEN, Judge.

An intestate decedent died owning a one-half interest in a homestead. Appellant, his wife, contended that, because there were no children of the marriage, she was entitled to take the decedent's interest in fee simple. Respondent, claiming to be the decedent's son, petitioned for summary assignment of the remainder interest in the homestead subject to a life estate in appellant. The district court found that clear and convincing evidence established the decedent's relationship as father of respondent and granted the petition. Appellant challenges that decision, arguing that the statute of limitations imposed by the Minnesota Parentage Act precludes respondent from establishing a parent-child relationship with the decedent. Because we hold that the relationship may be established by clear and convincing evidence apart from the Parentage Act and its time limitation, we affirm.

## FACTS[1]

Appellant Marie Palmer married James Palmer in 1948. They had no children, but in 1957, Palmer and Beverly Smith had a son, respondent Michael Smith. In 1959, pursuant to the law then in effect, Palmer pleaded guilty to the felony of illegitimacy with respect to respondent. Respondent's birth certificate was altered to list Palmer as his father with a handwritten annotation, "adjudication of paternity report."

During respondent's childhood, Palmer visited respondent two or three times a week at Smith's home, but they never visited at appellant's home. Respondent always addressed Palmer as Dad; Palmer referred to respondent as his son. Respondent received many gifts from Palmer; they hunted, golfed, and took trips to a lake cabin together. Photographs show that Palmer participated in family outings, graduations, and other events with respondent. Palmer attended respondent's wedding as father of the groom and remained close to Smith until her death in 1993.

Palmer died intestate in 1999, leaving a one-half interest in a homestead.[2] Appellant claimed that interest pursuant to Minn.Stat. § 524.2–402(a)(1) (1998) (providing that, when there is no surviving descendant, the homestead descends to the spouse). Respondent petitioned the district court for summary assignment of Palmer's interest alleging that, as Palmer's son, he was entitled to a remainder interest in the homestead pursuant to Minn. Stat. § 524.2–402(a)(2) (1998) (providing that homestead passes to a surviving descendant after the natural life of the spouse). Appellant opposed that action on

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. The facts are taken from the Agreement as to the Record drawn up by the parties pursuant to Minn. R. Civ.App. P. 110.04.

2. Decedent and his late brother owned the homestead; the other one-half interest now belongs to decedent's brother's wife.

the ground that Minn.Stat. § 524.2–114(2) (2000) requires a parent-child relationship to be established under the Parentage Act, Minn.Stat. §§ 257.51 and 257.74, and respondent, born in 1957, cannot meet this requirement because Minn.Stat. § 257.58 (2000) precludes actions brought more than one year after a child reaches the age of majority. The district court ruled for respondent and this appeal followed.

## ISSUE[3]

Can clear and convincing evidence establish a parent and child relationship under Minn.Stat. § 524.2–114(2) for the purposes of intestate succession notwithstanding any time limitation imposed by the Parentage Act?

## ANALYSIS

■ Statutory construction is a question of law, which this court reviews de novo. *Brookfield Trade Ctr. Inc. v. County of Ramsey*, 584 N.W.2d 390, 393 (Minn.1998).

■ Minn.Stat. § 524.2–114(2) provides that, for purposes of intestate succession,

a person is the child of the person's parents regardless of the marital status of the parents and the parent and child relationship *may* be established under the Parentage Act, sections 257.51 and 257.74.

(emphasis added). Respondent, however, cannot now establish his relationship with Palmer under the Parentage Act because of the statute of limitations. Appellant argues that, absent a relationship established under the Parentage Act, respondent cannot inherit.

To make this argument, appellant construes "may" in Minn.Stat. § 524.2–114(2) as "must." This construction disregards Minn.Stat. § 645.44, subd. 15 (2000), providing that "[m]ay is permissive." Minn. Stat. § 524.1–302 (2000) indicates that the probate court "has jurisdiction over all subject matter relating to estates of decedents including construction of wills and determination of heirs and successors of decedents." The probate court's jurisdiction over the determination of heirs and successors is not limited by the Parentage Act.

■ The interrelationship between the intestate succession provision of the Probate Code and the Parentage Act is an issue of first impression in Minnesota, but the New Jersey Supreme Court has addressed it. *Wingate v. Ryan*, 149 N.J. 227, 693 A.2d 457 (1997), also concerned a putative heir's attempt to establish paternity in a probate action after the time limit for establishing paternity under the parentage act had expired. The New Jersey Probate Code, like Minn.Stat. § 524.2–114(2), provided that "the parent and child relationship [of a decedent and a putative heir] *may* be established as provided by the 'New Jersey Parenting Act.'" *Id.* at 461 (emphasis added). *Wingate* concluded that the time limitation of the Parentage Act (in New Jersey, 23 years after birth) did not bar claims under the Probate Code and discussed the relationship between them.

[T]he Parentage Act and the Probate Code are independent statutes designed to address different primary rights. The purpose of the Parentage Act is to establish 'the legal relationship ... be-

---

**3.** The parties raised in district court the issue of whether Palmer's 1959 guilty plea to the charge of illegitimacy established his paternity for the purposes of section 524.2–114(2) of the Uniform Probate Act. The district court

determined that the plea did not establish paternity. Because respondent did not file a notice of review of this determination, we do not address it.

tween a child and the child's natural or adoptive parents, incident to which the law confers or imposes privileges, rights, duties and obligations. Child support is the major concern under the Parentage Act. The purpose of the Probate Code, on the other hand, is to determine the devolution of a decedent's real and personal property. The different purposes the two statutes serve, help to explain why the Legislature contemplated different periods of limitations for filing claims under those statutes.

\* \* \* \*

In contrast to children who file support claims, which accrue on the date of birth, *potential* heirs have no right to share in an estate until the death of the decedent. \* \* \* [C]laims under the Probate Code and the Parentage Act are subject to independent limitations periods. To hold otherwise would grant heirship immunity to parents of children who are born out of wedlock and do not establish parentage before reaching age twenty-three. That would terminate many claims before they accrue.

*Id.* at 463–64 (citations omitted). We find the reasoning of the New Jersey Supreme Court persuasive. Accordingly, we hold that, for the purpose of intestate succession, a parent-child relationship may be established by clear and convincing evidence regardless of the time limitation imposed by the Parentage Act.

Appellant claims *Wingate* is contrary to Minnesota policy as set forth in *Clay v. Clay*, 397 N.W.2d 571, 577 (Minn.App. 1986) (holding that the statute of limitations in the Parentage Act supercedes the statute of limitations for setting aside a judgment obtained by fraudulent misrep-

resentation). But *Clay* is not relevant here; it does not address the interrelationship between the Parentage Act and the Probate Code.[4]

### DECISION

For purposes of intestate succession, a parent-child relationship may be established by clear and convincing evidence regardless of the time limitation imposed by the Parentage Act. Respondent, having established his parent-child relationship to Palmer by clear and convincing evidence, is entitled to inherit as his descendent.

**Affirmed.**

---

**4.** Appellant also relies on *Witso v. Overby*, 627 N.W.2d 63 (Minn.2001) to argue that the Parentage Act is the exclusive means of establishing paternity. Her reliance is misplaced. *Witso* concerns a father's standing to bring an action to establish paternity, not the interrelationship between the Probate Code and the Parentage Act.